Mestré et al., Plaintiffs and Appellants, *v.* Michelena et al., Defendants and Appellees.

Appeal from the District Court of Mayagüez in an Action of Ejectment.

No. 2351.—Decided March 7, 1922.

Foreclosure — Res Judicata — Estoppel.—While a foreclosure proceeding was pending the defendants therein brought an action principally for the annulment of the mortgage and prayed in the complaint, among other things, for the annulment of the foreclosure proceeding. *Held:* That a new action by the mortgagors for the annulment of the said foreclosure proceedings being one between the same parties or their successors in interest, if not barred by the rule of *res judicata* is barred at least by the general rule of estoppel.

Id.—Summons.—In order that the summons to a mortgagor may be served on the person in charge of the property, in accordance with article 171 of the Mortgage Law Regulations, it is sufficient that the owner does not reside in the municipality where the property is situated, and it is not necessary that the owner's residence be unknown.

Id.—Limitation—Contract.—If a deed of sale executed in a foreclosure proceeding is not void, but voidable, it is a contract, and an action for its annulment is barred after four years, in accordance with section 1268 of the Civil Code.

Id.—Prescription—Nonresident.—The nonresidence to which section 1859 of the Civil Code refers in connection with the different periods of possession necessary for acquiring ownership by prescription, is not the nonresidence of the holder but that of the owner.

Id.—Third Person.—The facts show that the principal defendant had the character of a third person.

The facts are stated in the opinion.

*Messrs. M. A. Martínez, L. Llorens* and *A. Arroyo* for the appellants.

*Mr. L. Muñoz Morales* for the appellees.

Mr. Justice Wolf delivered the opinion of the court.

I. The District Court of Mayagüez found in favor of the defendants on the ground, among others, of *res adjudicata*. This plea is a form of estoppel and we think the complainants are estopped by their former suits and conduct taken together, whether the defense of *res adjudicata* is technically applicable or not, or whether the said defense applies to all the nullities now prayed for by the complainants in the suit. Let us summarize the facts.

The predecessor in title of the defendants, Nicolasa Bellvé, began a proceeding under the summary process of the Mortgage Law against the succession of Mestre y Mora to recover a certain mortgage credit. Whether or not the defendants were duly notified of this proceeding is another matter, but the fact is that while this summary proceeding was pending the said succession began suit against Nicolasa Bellvé and others. Although the principal object of the former complaint was to attack the mortgage credit and not the mortgage proceeding itself, yet one of the prayers of the said complaint was the annulment of the mortgage proceeding. The principal ground of the present suit is in substance the lack of jurisdiction of the lower court in the mortgage proceeding, inasmuch as the then defendants were not duly summoned. It is true that in this branch of the discussion the appellants do not use the word "jurisdiction," but they mention it strongly when they attempt to show that the mortgage proceeding was void.

The fact was that this question of jurisdiction was either necessarily involved in the original annulment suit, or the defendants were by their conduct estopped from raising it. At the time, the complainants had an absolutely clear opportunity to attack the mortgage proceeding. We can not agree with the appellants that they could not attack the mortgage proceeding because it had not terminated. This might be true with regard to some of the other grounds of nullity, but not with regard to the principal ground. When a nullity

of a legal proceeding is prayed for, anything that would make the proceeding null is available to a party and should be raised. *Ninlliat* v. *Suriñach et al.,* 27 P. R. R. 69, and cases. If a court in a mortgage proceeding is in fact absolutely without jurisdiction, that question can be raised directly or by collateral attack asking for the annulment. The appellants, in their brief, maintain that one of the tests for judging of the correctness of the plea of *res adjudicata* is whether the proof submitted or to be submitted in the two suits is the same, but the proof that the summons was void was available to the complainants in their original suit and would have annulled the mortgage proceeding, provided always that there was a ground of nullity. This is the same proof on which the appellants now principally rely. The appellants also say that a test of *res adjudicata* is to compare the practical results of the suits. Unquestionably the practical result of the first suit would have been to destroy the mortgage credits, but it would also have paralyzed or annulled the suit, and this whether a matter of jurisdiction was raised or not, and that is exactly the result at which the appellants are now aiming. Appellants ask us to follow the Louisiana doctrine with respect to *res adjudicata* rather than the common law doctrine, but even in Louisiana we take it that a matter of jurisdiction like the present and which was raised by one of the prayers, would be considered as involved in the suit. The case falls within the provisions of section 1219 of the Civil Code and sections 59, 61 and 101, page 6 of the Law of Evidence.

II. We think, moreover, that the complainants, by filing the original suit, practically admitted that they were notified of the original mortgage proceeding. We shall later discuss the alleged insufficiency of the notice or requisition (*requerimiento*). The master objection was and is that the said notice was served on a person not in due legal relation with the defendants. Nevertheless, in the former action of

annulment they recognized the existence of the mortgage proceeding and did not question the jurisdiction.  Thus they silently permitted the said Nicolasa Bellvé to suppose that they were not questioning the jurisdiction of the court to follow out the mortgage proceeding and, with the existence of the former suit and its conclusion in favor of Nicolasa Bellvé, there arose a complete estoppel in behalf of the subsequent purchasers, to say nothing of the elements of time or of the Mortgage Law.  This plea of estoppel, we think, is available to the defendants on the facts set up in their answer.  This would dispose of the principal ground of nullity, but there are other considerations.

III. The notice complained of was made as shown in the alleged return:

"On October 9, 1897, bailiff Andrés Avelino Lugo, procurator Rossy and the undersigned clerk met together at 3 p. m. at the Acacia farm in the Benavente ward of the municipal district of Hormigueros, judicial circuit of San Germán, for the purpose of making the demand as ordered.  In answer to our inquiry a neighbor informed us that Silverio Cabassa was in charge of the property. Having sent for him, since he was not on the property, he presented himself about ten minutes later and thereupon the said bailiff proceeded to serve the notice or demand upon him as the person in charge, since the property was not being worked, so that he might communicate to the owners that by order of the court of San Germán they were required to pay to Nicolasa Bellvé Márquez within a period of twenty days the sum of $7,350 and legal interest thereon which they owed her on a mortgage credit of $8,400 secured by a mortgage on said property as evidenced by a deed of January 10, 1890, with a warning that unless payment be made within the said period the property would be sold at public auction.  In these circumstances, I, the clerk, proceeded to serve upon the said Silverio Cabassa a true copy of the preceding writ, which I read to him word by word and also delivered to him the accompanying copies with a request that he have the same delivered to the owners as soon as possible.  Nothing else being required, the bailiff considered that service had been made and the papers referring thereto were signed by all present except the person in charge upon whom de-

mand was made, who explained that he did not know how to sign, and Mateo Fajardo, who was casually on the spot, signed for him at his request.—Attest.—(Sd.) Andrés A. Lugo.—Mateo Fajardo.— José Ml. Rossy.''

The appellees maintain that the objections of the complainants to the summons as shown by the return affect the truth or falsity of the return and not its sufficiency on its face. The appellants insist that the return is void on its face. The issue thus raised involves article 171 of the Regulations of the Mortgage Law, as follows:

''Art. 171.—When all of the property mortgaged is in the possession of one person only, according to the certificate of the registrar, the demand for payment shall be served on such person at his domicile, if he resides within the municipal district where any of such property is situated. The same procedure shall be observed with regard to each of the other holders of different properties, if there be several. When any of the persons on whom demand for payment is to be made should not reside in the municipal district where any of the property is situated, the demand shall be made on the person in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner thereof without delay. If the estate should be abandoned and no one in charge thereof, the demand shall be made on the administrative municipal authority of the town, with a similar direction to advise the debtor.''

And this in connection with the last paragraph of article 176, as follows:

''The provisions of the Law of Civil Procedure in force in Cuba, Porto Rico and the Philippines, shall be applicable to these proceedings as supplementary in so far as they are not in conflict with the provisions of the Mortgage Law and these regulations.''

At the hearing the appellants drew our attention to the case of *Arvelo* v. *Banco Territorial y Agrícola*, 25 P. R. R. 677. In that case this court, although the matter was not necessarily involved, appears to be saying that a notice to a person in charge of a piece of property may be given only

when the owner does not reside on the property and when his residence is not known. It suffices to say that article 171 of the Mortgage Law Regulations does not impose these two conditions, but simply says that if the owner does not reside on the property, etc.

The petition in the summary proceeding recited that the debtors lived in Mayagüez. Although it might be better practice for a creditor to notify the debtors personally when their residence is known, yet the idea of the Mortgage Law Regulations, article 171, is evidently that it is sufficient to notify the person in charge of the property if the owners are not present. So that, it being clearly stated in the petition that the owners were not residing on the property and this statement being made on the responsibility of the creditor and temporarily assumed to be true, the only alternative for the officer who executed the requisition was to deliver it to the person in charge of the property.

The appellants insist that under article 176 of the Mortgage Law Regulations it was necessary for the creditor at first definitely to ascertain that the debtors were not living in the jurisdiction by making something like a search through Cabo Rojo and Hormigueros where the property was located to find whether or not the debtors were actually there. We think article 171 speaks for itself and there is nothing suppletory necessary.

The question then arises,—Did the return of the officer show that the summons was made on the person in charge of the property? We have not been without some doubts as to whether the return ought not to have shown the legal capacity in which Silverio Cabassa was in charge of the property. But on the whole we are convinced that to say a person is in charge of property is to say that he is there in some legal concept, especially as the return shows that Silverio Cabassa was not only notified, but accepted the summons wherein he was required to notify the debtors. On

the face of the return Silverio Cabassa was the person in charge of the property and from his possession a legal relation with the owner would be presumed.  Such a legal relation would arise whether Silverio Cabassa was a mere tenant at will, a superintendent, or, as the proof of complainants tended to show, a person who was just suffered to cultivate a part of the land by the real owners.  With regard to the evidence tending to show that one of the owners was always on the farm, we may say that, given their legal residence in Mayagüez, as shown by the record, the proof to overcome the return would have to show clearly that one of said owners was living on the property at the time the summons was served on Cabassa.  Likewise if, as appellants say, the requisition is similar to a summons in an ordinary suit, then its defects could be cured by showing actual notice to the debtors as indicated by the record and by us in discussing *res adjudicata.*

At the trial the appellants attempted to show the falsity of the return, among other things, by proving that the debtors did live on the property.  The evidence submitted did not convince the court below and does not convince us that the appellants had any legal residence other than Mayagüez, although it may be true that one or another of them occasionally lived on the property.  If a man, for example, owns three or four farms in different jurisdictions and occasionally lives on each of them, but has his legal residence on one of them, and if he also has a mortgage on each of them, he, nevertheless, has only one legal residence and article 171 of the Mortgage Law Regulations would permit a notice to go to the person in charge of any other of the three or four pieces of property.  The Mortgage Law has in contemplation a notice to the owner of the property if he lives in the jurisdiction, or, if not, to the person who is found in some legal capacity on the property.

IV. The present suit set up a number of other nullities,

namely: 1. That the assessment of the property was not validly made.—2. That the experts were not properly named. —3. That the third auction was not validly held.—4. That the act of adjudication did not contain all necessary statements.

The appellees, with considerable show of reason, maintain that these nullities do not in fact exist and that the sections of the Mortgage Law on which the appellants rely are not applicable, but other sections or considerations. These alleged nullities would not be covered by the plea of *res adjudicata,* because the defects or failures referred to arose after the institution of the first suit, namely, sometime in 1899. We shall not discuss the alleged nullities in detail, because we are of the ·opinion that the action to attack these particular nullities has prescribed. We agree with the appellants that if the Court of First Instance of San Germán did not acquire jurisdiction of the persons of the debtors by the notice on Silverio Cabassa, the whole proceeding was null and void *ab initio,* and that no valid adjudication or judgment could arise; but as we hold that the District Court of San Germán did acquire jurisdiction of the debtors, we think section 1268 is applicable. The sale that takes place in a mortgage proceeding is either an act of the debtor or of the paramount authority of the State. The adjudication or deed that is made at the sale of the property is a contract either between the original debtor and the purchaser or a contract between the State and the purchaser. The court having jurisdiction of the subject-matter and of the parties, any defect in the execution of the contract would make the contract voidable, but not absolutely void. There was a judgment in adjudication and hence section 1268 was applicable, as the present action of nullity was not brought within four years.

V. The appellees also maintain that the judicial sale was ratified by the subsequent acts of the debtors. We are in-

clined to agree with the appellants that if the court of San
German did not acquire jurisdiction over the debtors, the
sale made was absolutely void and that a thing that is ab-
solutely void can not be validated by subsequent acts, al-
though situations may arise similar to those involved in the
case of *Carrasquillo* v. *Beltrán et al.,* 29 P. R. R. 897. But
as we hold that the court did have jurisdiction, the ratifi-
cation could take place. The property was adjudicated to
Nicolasa Bellvé in February, 1901, and this property was
sold to Langé on the 23rd of December of the same year.
On April 1, 1904, the same succession of Salvador Mestre
y Mora sold to the said Langé the part of Acacia which was
not covered by the mortgage proceeding and the deed de-
scribed in detail the mortgage proceeding, and at that time
the debtors knew of the result of the previous suits and the
alleged grounds of nullity.

VI. More or less independently of the previous discus-
sion, we agree with the appellees that Santiago Michelena,
who is one of the appellees in this case, was a third person
under the Mortgage Law. Nicolasa Bellvé sold to Langé.
Langé sold to Michelena. The act or deed of adjudication
to Nicolasa Bellvé was duly recorded in the registry of prop-
erty and in that deed there was only recited the due process
of the court and the fact of adjudication. The much dis-
cussed summons was not transcribed. Now, while it was
available to the appellants to attack the jurisdiction of the
court of San Germán, yet the lack of jurisdiction of that court
did not appear from the registry. We are clearly of the
opinion that when the registry recites a judicial sale by a
court of record, a purchaser is not bound to look outside of
the registry. *People* v. *Riera,* 27 P. R. R. 1; *Sánchez* v.
*Hartzell et al.,* 26 P. R. R. 620; *Ayllón* v. *González,* 28 P.
R. R. 61. The alleged defects did not clearly appear from
the registry as required by article 34 of the Mortgage Law.

But even if this was not so and there was something in

the registry to cause a purchaser to examine the return made by the official in the original summons, there was nothing therein that would deprive him of his character as a third person, especially if he had seen the suit previously begun by the appellants in 1899.

VII. Acquisitive prescription would run in favor of appellee Michelena. Some of the foregoing considerations are applicable to the usual questions of good faith and just title, but the appellants also say that the period of prescription could not run in favor of Michelena, because he was residing outside of the Island. We agree with the appellees that the provisions of section 1859 of the Civil Code which makes an exception in favor of absent persons is an exception made in favor of original owners. In other words, if a man whose property has been taken by another is away from the Island, the period of prescription is twenty years; but if it is the person who holds adversely who is away, his absence will not benefit the real owner, because, being present on the scene, the real owner can always begin his action and get service directly or by publication against the defendant. According to the Civil Code, the legal possession of Michelena began by the deed made to him by Langé in 1901 and likewise he could count the possession of his predecessors in title.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.